UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ALBERT DeCANDIA,**

    **Plaintiff,**

v.                                                             Case No.: **2:23cv101**

**REMINGTON LODGING &**
**HOSPITALITY, LLC,**
**et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Remington Lodging & Hospitality, LLC; Defendant HH LC Portfolio LLC; and Defendant HH TRS LC Portfolio LLC's Motion for Summary Judgment and accompanying memorandum in support. ECF Nos. 25, 26. Plaintiff filed an opposition, ECF No. 27, and Defendants replied, ECF No. 28. On July 17, 2023, the parties consented to jurisdiction before the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. ECF No. 18. The undersigned makes this ruling without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the reasons set forth below, Defendants' Motion for Summary Judgment, ECF No. 25, is **DENIED**.

        **I.**        **PROCEDURAL BACKGROUND**

Plaintiff filed his Complaint on March 16, 2023, and amended on July 18, 2023, alleging various theories of negligence. ECF Nos. 1, 21. Plaintiff was a guest at the Hilton Garden Inn Virginia Beach Town Center, a hotel that Defendants owned and operated, when he tripped over a wet floor sign and injured himself. ECF No. 21. Plaintiff contends that Defendants owed him a

duty of care as a guest of the hotel, and that they breached that duty by: (1) selecting a metallic and brown wet floor sign, causing it to blend in with surrounding décor; (2) failing to ensure the sign was securely upright, such that the sign fell flat; (3) failing to ensure the sign was in a location such that it would not pose a tripping hazard, and (4) failing to remove the sign from its hazardous location once the floor was dry. *Id.* at 5–6. Because this matter is fully briefed, Defendants' Motion for Summary Judgment, ECF No. 25, is ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine dispute "as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56. "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations omitted). The moving party has the initial burden to show the "absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law." *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 718 (4th Cir. 2003). The burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Such facts are considered in the light most favorable to the nonmoving party and all "justifiable inferences" are drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than "[c]onclusory or speculative allegations" concerning a material fact. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Rather,

there must be sufficient evidence that would enable a reasonable factfinder to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 251–52.

At the summary judgment phase, the Court is not "to weigh the evidence and determine the truth of the matter," but instead "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). In determining whether there is a genuine issue for trial, "[t]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 247 (4th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court has fashioned its undisputed material facts from those facts put forth by the parties which were uncontested, consistent with Eastern District of Virginia Local Rule 56(b). The Court resolves the Motion for Summary Judgment pursuant to the following undisputed material facts:

On March 7, 2022, Plaintiff and Plaintiff's wife checked into a room for an extended stay at the Hilton Garden Inn at Virginia Beach Town Center, due to a water leak in their home that necessitated significant repairs. ECF No. 30, attach. 1 at 21:10–22:22, 24:2–5.[1] Plaintiff and his wife stayed in the hotel until June 18, 2022. *Id.* at 24:6–18

Plaintiff followed a routine while at the hotel: on weekdays between 5:30 a.m. and 6:00 a.m. he would retrieve tea from the breakfast area, bring the tea upstairs to his wife, and then go back downstairs to make a cup of coffee for himself before leaving for work. *Id.* at 27:1–28:11. On weekends, Plaintiff's routine would vary. *Id.* at 31:8–16. On some days, hotel staff would

---

[1] All deposition citations are to the page of the deposition transcript.

3

already have placed carafes of coffee and hot water on the service table by the time Plaintiff reached the breakfast area. *Id.* at 32:12–14. If the carafes were not yet out, Plaintiff would walk down an aisle separating two service stations, passing the service table, and make his way to the kitchen window to ask the cook, Wilbur Clark, for hot water. *Id.* at 32:15–22, 36:6–37:11.

Each night, Defendants' employees mopped the bar and breakfast area's floor, propped up the wet floor sign, and turned off the lights. ECF No. 30, attach. 2 at 17:8–17. Then each morning, right before breakfast service began at 6:00 a.m., employees removed the wet floor sign and turned on the lights. *Id.* at 17:8–18:1. The wet floor sign used in the breakfast area is 24 inches by 14 inches and has a brown frame with a metallic surface on the front, a plain brown surface on the back, and caution language written in both English and Spanish on the front. ECF No. 26, attach. 3; ECF No. 27, attachs. 1, 2. A photograph submitted in Defendants' memorandum in support depicts the sign *in situ* with the décor of the kitchen area. ECF No. 26 at 4. Defendants specifically chose the metallic and brown wet floor sign in lieu of a conventional yellow sign for its aesthetic appeal. ECF No. 30, attach. 2 at 12:17–13:11. The metallic sign has been used by Defendants for approximately five years, including at other hotel properties. *Id.* at 20:14–18; 12:22–13:3. This was Defendants' first incident involving a patron tripping over the sign. *Id.* at 25:17–23.

On May 12, 2022, at approximately 5:30 a.m., Plaintiff went to the hotel's breakfast area to retrieve hot water for his wife. ECF No. 30, attach. 1 at 21:3–9; 34:2–5. The service table was not yet set with the hot water carafe, so Plaintiff took his usual walking route to the kitchen window. *Id.* at 36:3–21, 40:6–17. According to both Plaintiff and the hotel manager, the floors at that point were not wet or damp. *Id.* at 45:21–46:5; ECF No. 30, attach. 2 at 20:2–13. Mr. Clark gave Plaintiff a cup of hot water at the kitchen window. ECF No. 30, attach. 1 at 44:5–8. To return to his room upstairs, Plaintiff re-tread the same path but, on his way back, tripped over the

4

wet floor sign. *Id.* at 44:5–12; 49:1–5. Joyce Hayford, a hotel employee, recalled observing the sign in a proper upright position shortly before the accident. ECF No. 30, attach. 3 at 24:17–25:6. Plaintiff denied medical assistance at the scene, although his wife later took him to the hospital. ECF No. 30, attach. 1 at 59:16–60:1. He was seventy-two years old at the time of the incident. ECF No. 27 at 14.

## IV.  DISCUSSION

In his Amended Complaint, Plaintiff alleges that Defendants, working in the hotel business, owed him a heightened duty of care as a guest of the hotel, and that they breached that duty by: (1) selecting a metallic and brown wet floor sign, which blended in with surrounding décor; (2) placing the sign such that it fell over and laid flat; (3) failing to ensure the sign was in a location where it would not pose a tripping hazard, and (4) failing to remove the sign once the floor was dry. ECF No. 21 at 5–6. Defendants moved for summary judgment, arguing that Plaintiff cannot establish a breach of a duty of care, and cannot demonstrate that Defendants were on notice of any hazard. ECF No. 26 at 2. Further, Defendants contend that the wet floor sign was open and obvious as a matter of law, and therefore Plaintiff was contributorily negligent by tripping over it. *Id.* The Court will address each argument in turn.

1. <u>Negligence</u>

Under Virginia law, "[n]egligence is not actionable unless there is a legal duty, a violation of the duty, and consequent damages. Thus, the threshold question is whether a duty of care exists on the part of a defendant to a plaintiff." *Marshall v. Winston*, 389 S.E.2d 902, 904 (Va. 1990) (internal citation omitted). It is well-established that a "special legal relationship between innkeepers and guests," exists which "has long been recognized by the common law" as constituting "an elevated duty of care." *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 432–34 &

n.4 (Va. 2006). The heightened duty of care requires that the innkeeper exercise "the utmost care and diligence of very cautious persons;" and thus, an innkeeper "will be held liable for the slightest negligence which human care, skill and foresight could have foreseen and guarded against." *Id.* (quoting *Norfolk & W. Ry. v. Birchfield*, 54 S.E. 879, 883 (Va. 1906)); *see also Jarmak v. Ramos*, 497 F. App'x 289, 292 n.3 (4th Cir. 2012) (quoting *Ely v. Blevins*, 706 F.2d 479, 481 (4th Cir. 1983)) ("We have described the innkeeper's duty under Virginia law as 'a specially [sic] high duty of care.'"); *Haynes-Garrett* v. *Dunn*, 818 S.E.2d 798, 803 (Va. 2018) (quoting *Crosswhite v. Shelby Operating Corp.*, 30 S.E.2d 673, 674 (Va. 1944)) (noting an innkeeper is required "to take every reasonable precaution to protect the person and property of their guests and boarders").

Defendants first argue that Plaintiff cannot establish they breached their duty of care. ECF No. 26 at 8. They argue that if anything, the use of a wet floor sign is evidence that the hotel adhered to the relevant standard of care – and that the size, color, and form of the sign generally comport with industry standards. *Id.* In support of the argument that the hotel adhered to its duty, Defendants cite to Ms. Hayford's testimony that she saw the sign upright the morning of Plaintiff's fall, and that as such, the sign would have acted as designed. *Id.* at 8.

In response, Plaintiff contends that Defendants were negligent in selecting this specific caution sign and locating it where they did. ECF No. 27 at 7–8. In support of his argument, Plaintiff notes that Defendants regularly used yellow caution signs in other areas of the hotels and should have done so in this area as well. *Id.* Plaintiff also testified that he could not recall observing the sign prior to his fall, that he did not hear the sign fall to ground when he tripped, and that the color of the sign blended in with the hotel's flooring. ECF No. 30, attach. 1 at 52:9–15, 49:10–18. It is undisputed that the lights were off in the breakfast area of the hotel where the sign was placed. ECF No. 30, attach. 2 at 12:17–13:1; ECF No. 30, attach. 1 at 37:3–6.

After reviewing the evidence and drawing all reasonable inferences in Plaintiff's favor, the Court finds that material facts are in genuine dispute. A reasonable jury could conclude that Defendants' actions including: (1) leaving in place a wooden "wet floor" sign against a backdrop of wooden furniture (as depicted in the proffered photograph); (2) in a darkened area where the lights had been turned off; (3) where the hotel knew or should have known patrons would traverse in the early morning hours; and (4) where the hotel knew the sign was no longer needed because the floor had dried hours before, all constituted a breach of their heightened duty of care to those patrons. The Court does not "weigh the evidence and determine the truth of the matter" at the summary judgment stage, nor does it assess the credibility of the evidence. *See Tolan*, 572 U.S. at 656. Instead, the Court simply concludes that, based on the proffered evidence, including whether the sign was sufficiently visible under the dim lighting conditions, and considering an innkeeper's heightened duty of care under Virginia law, the Court finds that a jury could reasonably determine that Defendants breached their duty of care in selecting and locating the sign. This issue of negligence is therefore reserved for the jury, and Defendants' Motion for Summary Judgment is **DENIED** on this ground.

2. Actual or Constructive Notice

Under Virginia law, in premises liability cases a plaintiff must also introduce evidence that the defendant had "actual or constructive knowledge of a defective condition on the premises." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993). It is sufficient for a plaintiff to show that the owner of the premises had constructive knowledge of a defect, that is, "[i]f an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the defendant] had a duty to exercise reasonable care to avoid the genesis of the danger." *Winn-Dixie Stores, Inc. v. Parker*,

7

396 S.E.2d 649, 650 (Va. 1990) (quoting *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 231 (Va. 1986)). However, if the defendant creates the hazardous condition, actual or constructive knowledge is not required. *E.g., Nydegger-Friedman Realty Corp. v. Sweeney*, 271 F.2d 954, 955 (4th Cir. 1959) (citing *West v. City of Portsmouth*, 84 S.E.2d 503, 505 (Va. 1954)).

Defendants argue that they did not create a hazardous condition, nor did they have actual or constructive knowledge that the sign itself was a hazard. ECF No. 26 at 9. In support of their contention, Defendants point to the absence of other accidents involving this sign and Ms. Hayford's observation that the sign was upright and properly positioned prior to the incident. *Id.* In response, Plaintiff argues that Defendants did in fact create the hazardous condition by using a "defectively colored" sign that was difficult to see in the dim lighting conditions and by leaving the sign in a walkway that guests traversed. ECF No. 27 at 10.

Construing the evidence in the light most favorable to Plaintiff as the nonmovant, the Court finds that there are genuine disputes of material facts. Plaintiff's testimony that he did not see the sign, that the sign blended in with the surroundings, and that the area was dimly lit, all could lead a jury to infer that under these circumstances, Defendants created a hazardous condition by placing the dark sign in a darkened area and leaving it there long after it was still necessary. *See, e.g.*, ECF No. 30, attach. 1 at 49:12–18. The issue of notice is therefore reserved for the jury, and Defendants' Motion for Summary Judgment is **DENIED** on this ground.

   3. Contributory Negligence

Under Virginia law, contributory negligence bars recovery for injuries caused at least in part by another's negligence. *See Baker v. Butterworth*, 89 S.E. 849, 849–50 (Va. 1916). A plaintiff will be guilty of contributory negligence if he "trips and falls over an open and obvious condition or defect." *Scott v. City of Lynchburg*, 399 S.E.2d 809, 810 (Va. 1999). An open and

obvious defect exists when the plaintiff "knew of the existence of the condition," was "remarkably unobservant," or if the accident occurred in "broad daylight," or in the absence of "conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it." *Id.* at 811; *Hillsville v. Nester,* 205 S.E.2d 398, 399–400 (Va. 1974) (internal citations omitted). If reasonable minds may disagree whether a defect is "open and obvious," contributory negligence will not be found. *Crocker v. WTAR Radio Corp.,* 74 S.E.2d 51, 53 (Va. 1953) (holding that where two levels of a stage matched in color, the plaintiff was not necessarily contributorily negligent for tripping because while the situation was "open" it may not have been "obvious"); *Nuckoles v. F. W. Woolworth Co.,* 372 F.2d 286, 287–88 (4th Cir. 1967) (holding that where a cardboard box matched the floor of a well-lit store, the plaintiff was not contributorily negligent for tripping). "The issue whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be decided by the fact finder." *Moses v. Sw. Virginia Transit Mgmt. Co.,* 643 S.E.2d 156, 160 (Va. 2007) (quoting *Jenkins v. Pyles,* 611 S.E.2d 404, 407 (Va. 2005)). This is especially true when "it arises upon a state of facts from which reasonable men might draw different conclusions either as to the facts or the conclusions or inferences to be drawn from the facts." *Nuckoles,* 372 F.2d at 287–88 (internal citations omitted).

Defendants argue that the wet floor sign was 24 inches x 14 inches, properly positioned upright, and located in the same place every day, so if Plaintiff exercised ordinary care, he would have seen the sign. ECF No. 26 at 10–11. Moreover, Defendants point out that the incident occurred two months into Plaintiff's stay, and as such, he should have been aware of the wet floor sign. *Id.* In opposition, Plaintiff contends that the sign was not open and obvious and thus, that he was not contributorily negligent. ECF No. 27 at 12. He argues that he had never seen the sign, that the sign blended in with the surroundings, and that his perception must be viewed through the

lens of his age. *Id.* at 12–14. Further, he testified in his deposition that he did not see the sign upright and did not hear the sign hit the floor when he fell. ECF No. 30, attach. 1 at 49:10–18; 52:9–15.

Here, construing the evidence in the light most favorable to the nonmoving party – Plaintiff's testimony that he did not see the sign, that the sign blended in with the surroundings, and that the lights were off and the breakfast area was dimly lit – all could lead a reasonable jury to infer that under these circumstances, the danger presented by the sign was not open and obvious. The incident, and all of Plaintiff's early morning trips to get hot water, occurred in area where the lights were turned off and which was only dim lit – not broad daylight. *See Nester*, 205 S.E.2d at 399. Moreover, Plaintiff contends that he was unaware of the sign and had not ever noticed it. ECF No. 27 at 12–14. Consequently, while Plaintiff had been at the hotel for approximately two months prior to his fall, the record is not developed as to how often the Plaintiff was required to travel to the kitchen for hot water—whether regularly or only occasionally—thereby passing the wet floor sign and permitting the reasonable inference that he should have been aware of the sign in that location. *See, e.g.*, ECF No. 30, attach. 1 at 29:10–15 ("Normally I would go down there and [the hot water and coffee] would be out already. . . .").

Additionally, Plaintiff testified in his deposition that he did not see the sign upright and did not hear the sign hit the floor. *Id.* at 49:10–18; 52:9–15. Thus, a jury could also reasonably infer that Plaintiff did not see the sign because it had slid to the floor and was laying down, and that Plaintiff did not hear the sign hit the floor because it had already fallen, thereby making it even less an obvious hazard. While a reasonable jury could conclude that Plaintiff essentially "close[d] [his] eyes" and walked through the breakfast area without care for his surroundings, and therefore find him contributorily negligent, *see Gottlieb v. Andrus*, 104 S.E.2d 743, 747 (Va. 1958), they

could just as easily find that because the sign blended in with the surrounding décor, the area was dimly lit, and the sign was laying on its side, that Plaintiff was not contributorily negligent, *see Nuckoles*, 372 F.2d at 287–88. At the summary judgment stage, the Court declines to assess the credibility of this evidence or determine the truth thereof. Instead, the Court only finds that a jury may believe Plaintiff's testimony that the sign blended in with the surrounding décor or was lying flat, and thus, he was not contributorily negligent. The issue of contributory negligence is therefore reserved for the jury, and Defendants' Motion for Summary Judgment is **DENIED** on this ground.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 25, is **DENIED**. The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 10, 2024